UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as
Receiver of AmTrust Bank,

                        Plaintiff,

        -against-

US MORTGAGE CORPORATION,

                        Defendant.
--------------------------------------------------------------X
US MORTGAGE CORPORATION,

                Third Party Plaintiff,

        -against-
LAWRENCE CONDE, MARIAN CONDE AND
MICHAEL CONDE,

                Third Party Defendants.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 13-517 (EK)(AYS)

**SHIELDS, Magistrate Judge:**

This case was commenced on January 29, 2013 by Plaintiff Federal Deposit Insurance Corporation ("FDIC"). FDIC named as Defendant US Mortgage Corporation ("USM"). Shortly after commencement of this action, USM commenced a third-party action against three individuals, including Michael Conde.

Presently before this Court, upon referral of the Honorable Eric Komitee for Report and Recommendation, is USM's renewed motion for default judgment against Michael Conde.

For the reasons set forth below, this Court recommends that the motion for entry of a judgment of default against Michael Conde be granted.

1

BACKGROUND AND PRIOR PROCEEDINGS

FDIC is a corporation organized under the laws of the United States of America. Under the Federal Deposit Insurance Act (the "FDIA") FDIC is authorized to be appointed as a receiver for failed insured depository institutions. FDIC commenced this action in its capacity as receiver for one of those failed institutions, AmTrust Bank ("AMT"). In that capacity, FDIC prosecutes this action in the shoes of AMT.

When this lawsuit was commenced USM was a mortgage broker with its principal place of business in this District. FDIC alleged herein that USM delivered to AMT a loan package that misrepresented or omitted material information about a straw borrower, and the non-arms-length nature of the transaction. The mortgage forming the basis of FDIC's claim against USM (the "Mortgage") was funded by AMT on April 7, 2006, in the amount of $1.1 million (the "Loan"). The borrower on the Loan was Lawrence Conde ("Lawrence"). Lawrence stated that the Loan was sought to finance the purchase of a home located in Port Jefferson, New York (the "Home"). According to the Loan and Mortgage documents, Lawrence was purchasing the Home from a seller, named as Marian Campi ("Marian").

As noted, FDIC's complaint alleged that the Loan was a straw transaction. According to the FDIC, Marian's real last name is Conde - not "Campi". Marian was, at the time of the Loan, married to Michael Conde ("Michael"). Marian and Michael were co-debtors in bankruptcy at the time of the Loan. They are alleged to have hatched a scheme to sell the Home (where Marian and Michael lived) to Lawrence, who, it turns out, was Michael's father. While Lawrence represented that he would live in the Home, he never did and, according to FDIC, it was never his intention to do so. The sale to Lawrence was alleged to have been made at the inflated price of $1.5 million. This loan amount allowed Marian and Michael to maintain their residence in the

2

Home, and generate sufficient excess proceeds to pay their bankruptcy trustee over $500,000 in exchange for a global release of their bankruptcy debts. FDIC alleged that Lawrence obtained the Loan with no intention of repayment, and knowing that Marian and Michael would remain in the Home. In furtherance of this alleged scheme, it was agreed that Michael's surname (which is the same surname as Lawrence) would be kept off of the Loan documents. Marian is alleged to have been in on the scheme; she agreed to omit the name Conde from the Loan documents and instead use her maiden name - "Campi." Ultimately, the Loan went into default. While the scheme was alleged to have been hatched by Marian, Michael and Lawrence, FDIC never sued them. Instead, based upon factual allegations regarding the alleged scheme, FDIC sued only USM for breach of contract. Complaint ("Compl."), Docket Entry ("DE") [1]. It was FDIC's position that USM was responsible for allowing the sham transaction to take place.

In March of 2013, USM brought Michael, Marian, and Lawrence into this action by commencement of a third-party action naming them as third-party defendants. While none of these individuals were named by FDIC, USM nonetheless consistently referred to them as "cross-defendants." They were not - they were third-party defendants named only by USM. USM's third-party complaint alleged claims for implied indemnity, comparative indemnity and contribution, declaratory relief, and equitable indemnity. Third Party Compl., DE [6]. Essentially, all of the claims were based upon the theory that if the scheme alleged by FDIC were true, that scheme was also perpetrated upon USM. Accordingly, any amounts that USM owed to FDIC were, in turn, owed to USM by Marian, Michael and Lawrence. Michael and Lawrence (but not Marian) timely answered USM's third-party complaint and asserted seventeen affirmative defenses. DE [13]. Their lawyer at the time was John DeMaio ("DeMaio").

When Marian failed to answer, USM moved for entry of a certificate of default against her. DE [17]. That was denied because of a spelling mistake. Later, a certificate of default against Marian was entered. DE [21]. Thereafter, USM moved for entry of a judgment of default against Marian. DE [23]. That request was denied without prejudice by the then-assigned District (and now Circuit) Judge Bianco. See Order dated August 16, 2013. USM then served an amended motion for a judgment of default, and submitted a proposed judgment against Marian. DE [25]-[26]. That judgment was never entered.

In the meantime, DeMaio filed discovery responses on behalf of his clients - Lawrence and Michael - on the docket herein. DE [27]-[29]. DeMaio was reminded that the filing of such discovery was improper, but those documents remain on the docket. In November of 2013, USM filed a motion to compel the depositions of the non-defaulting third-party defendants. DE [30]. In response, then-assigned Magistrate Judge Tomlinson set the matter down for a conference to be held on November 15, 2013. DeMaio was unavailable and the conference was adjourned. The motion to compel was not pursued further. Instead, USM pursued other litigation avenues, seeking leave to amend its answer to file additional affirmative defenses and claims. DE [36]. New discovery deadlines were set, with a proposed joint pretrial order to be submitted by March of 2014. DE [37].

Thereafter, DeMaio filed opposition to USM's motion to amend its answer and third-party complaint, which pleading sought inter alia, to add Ira S. Ezratty ("Ezratty") as a defendant. DE [40]. Judge Bianco set oral argument on the motion for January of 2014. After that argument, Judge Bianco granted the motion to amend. In light of that order Magistrate Judge Tomlinson scheduled a telephone status conference for February 18, 2014. The day after that conference was held, a new discovery order was entered. DE [52]. On February 19, 2014, DeMaio filed an

4

answer to the amended third-party complaint on behalf of Michael and Lawrence (styled as an answer to the amended cross-complaint). DE [53]. Like the earlier pleading, that document denied all of USM's claims against Lawrence and Michael and asserted seventeen affirmative defenses. On February 24, 2014, Ezratty sought leave of Judge Bianco to move to dismiss all claims against him. DE [54]. Judge Bianco scheduled oral argument for March 7, 2014. That conference was held, DE [58], and the interested parties thereafter filed their motion papers. DE [59]-[67].

In March of 2014 USM moved for entry of default against Edward A, Christiansen ("Christiansen"), who, like Ezratty, was added to this case in January of 2014. DE [61]. As later became clear, such default was never noted and no judgment against Christiansen was ever entered. In June of 2014, Ezratty sought a stay of discovery pending the outcome of his motion to dismiss. DE [72]. Magistrate Judge Tomlinson granted that motion in part; the taking of depositions was stayed, except for the deposition of Lawrence which the Court permitted. The denial of the stay as to Lawrence was due to his age and ill health. DE [73]. The motion to stay paper discovery was denied. Id. In response to an inquiry from Judge Tomlinson as to such paper discovery, counsel for Ezratty stated that he did not serve any third-party demands for paper discovery, but that counsel for the parties to the action had provided him with all documents previously exchanged - which amounted to approximately 2500 pages. Thus, there were no outstanding requests for documents from Ezratty. DE [74].

Judge Bianco held oral argument on Ezratty's motion to dismiss on July 17, 2014. During that argument Judge Bianco granted the motion, but allowed USM leave to file a second amended third-party complaint by August 22, 2014. Pre-motion letter requirements were waived as to any motion to dismiss that Ezratty might make as to any subsequent pleading that USM

might decide to file against him. DE [75]-[76]. USM then sought additional time in which to serve an amended pleading against Ezratty, which request was granted by Judge Bianco. This extended USM's time to amend to September 12, 2014. An amended pleading was served on that date. The docket herein reflects filing of that document (which is the presently operative pleading appearing at DE [82]) on September 12, 2015 - this docketing reflects a one-year error on the docket that has never been corrected. Nonetheless, this Court is convinced that the pleading was timely answered by DeMaio, on behalf of Michael and Lawrence, on September 23, 2014. See DE [83].

Filing a letter with Judge Bianco, Ezratty again moved to dismiss with briefing to be completed by November 24, 2014. DE [84]. In an order dated October 6, 2014, while Ezratty's dispositive motion was being briefed, Judge Tomlinson noted her earlier stay of depositions and adjourned her next scheduled pretrial conference, without date, until resolution of motion practice with respect to Ezratty's motion to dismiss the newly amended third-party complaint. Ezratty's motion to dismiss was fully briefed when Judge Bianco was elevated to the Second Circuit. The case was thereafter transferred to the Honorable Arthur D. Spatt. See Order dated June 19, 2015. On September 15, 2015, Judge Spatt considered the briefing that took place before Judge Bianco and granted Ezratty's motion to dismiss. DE [91].

On September 22, 2015, FDIC filed a letter seeking to schedule a settlement conference before Judge Tomlinson. DE [92]. That letter stated, frankly, that "from a realistic standpoint", with Ezratty "and his supposed insurance carrier no longer a part of the case, there were presently 'dim' prospects for FDIC to obtain any meaningful recovery from any other named parties". Id. FDIC thought it would therefore be a meaningful time to explore settlement in earnest "before pouring more money and effort into at least four party depositions that were

noticed but not taken." DE [92]. The next day Judge Tomlinson responded that the Court cannot hold a settlement conference via telephone, but if the parties wished to participate in such a conference they must file a joint letter requesting a conference and indicate their availabilities to attend. DE [93].

On September 24, 2015, DeMaio advised Judge Tomlinson that his clients (Michael and Lawrence) were in financial straits, and asked that they be allowed to participate in any settlement conference via telephone. Judge Tomlinson repeated her unwillingness to conduct settlement negotiations via telephone, but stated her continued willingness to conduct an in-person settlement conference. She asked the parties to submit a joint letter by September 25, 2015, if they were willing to participate in a settlement conference. On September 29, 2015, USM stated that since discovery was stalled because of the pendency of Ezratty's motion to dismiss (which was ultimately granted), there were gaps in discovery that would make a settlement conference unfruitful at that time. DE [94]. USM noted that the Home was under foreclosure and for sale. Therefore, FDIC's damages were, at the present time, unclear. In light of these facts, USM proposed that the Court set the case down for a status conference within 30 days, and a settlement conference 30 days thereafter. These time periods were stated to be appropriate to "permit the parties to conduct additional discovery with the objective of a settlement conference shortly on the horizon." DE [94].

In accord with USM's request, Judge Tomlinson entered an order setting this case down for a status conference to be held on November 19, 2015. A status conference was held on that day during which Judge Tomlinson entered an order noting the progress of discovery and setting deadlines. Judge Tomlinson noted that FDIC intended to depose a representative of USM. DeMaio stated that his clients (which did not include Marian and Christiansen) did not intend to

7

take any depositions. USM stated its intention to depose the FDIC, Marian, Michael, Lawrence and Christiansen. As to the Home, it was noted that foreclosure proceedings were ongoing and not yet complete. By this time, Marian and Michael were engaged in divorce proceedings. Marian was in exclusive possession of the Home until the divorce was finalized. USM was granted leave to serve additional discovery demands by December 1, 2015 with responses due by December 31, 2015. The deadline for the taking of all fact discovery was set at January 31, 2016. Expert discovery, if any, was ordered to be complete by April 29, 2016. Dispositive motion practice was to begin with the service of any movant's Rule 56.1 statement by May 20, 2016 and counter-statement by June 10, 2016. Any requests to engage in summary judgment motion practice were scheduled to be addressed to Judge Spatt by June 21, 2016. A joint pretrial order was to be submitted via ECF on August 22, 2016, and a final pretrial conference was scheduled for August 30, 2016. DE [95]. On December 21, 2015, USM requested an extension of Judge Tomlinson's discovery deadlines because of confusion regarding the mailing address of counsel for the FDIC. DE [97]. The request was granted.

On June 23, 2016, FDIC wrote to Judge Spatt indicating its request to move for summary judgment as to the liability of USM. DE [101]. Counsel for all parties were served with the letter request. The "cc" on the letter indicates that Marian was appearing pro se at the time. Id. On June 16, 2016, DeMaio opposed the motion request by way of a counter-statement of material facts submitted on behalf of Lawrence and Michael. DE [102]. Judge Spatt then set July 14, 2016 for a pre-motion conference. DE [103]. Counsel for USM requested to appear telephonically, which request was granted. DE [104]. Judge Spatt made it clear that the parties should be prepared to discuss settlement at the conference. DE [105]. Neither DeMaio nor his client appeared at the July 14, 2016 conference. On that same date, Judge Spatt's law clerk wrote to DeMaio at the

8

direction of Judge Spatt. That letter stated the Judge's intent to find DeMaio's failure to appear at the conference a potential violation of his duties as an officer of the Court. The letter also advised DeMaio that a settlement conference was scheduled before Judge Tomlinson on August 10, 2016. DeMaio was warned that his failure to appear at the settlement conference (or at any other court-ordered conference or trial) might result in the Court's consideration of the imposition of sanctions. DE [106]. In a letter dated August 3, 2016 (a week ahead of the settlement conference scheduled to take place before Judge Tomlinson) DeMaio wrote to Judge Spatt indicating that neither Lawrence nor Michael would be contributing to any settlement, a position which DeMaio stated was not negotiable. DeMaio also stated, briefly, his clients' position on the merits. Thus, he stated that Michael never owed the Home and that all actions taken with respect thereto were taken through, and with the approval of, the Bankruptcy Court. DE [108].

On August 10, 2016 Judge Tomlinson held a settlement conference. DE [109]. The minute order entered with respect thereto noted that progress was made, and scheduled a follow-up settlement conference to be held on September 23, 2016. Judge Tomlinson noted that neither DeMaio nor his clients (Lawrence and Michael) were in attendance at the August 10 conference. She noted that DeMaio said that he had advised his clients of the conference but they declined to attend. Judge Tomlinson's order directed Michael and Lawrence to appear at the September 23, 2016 conference. In response to a claim that Lawrence was elderly and ill and his request to appear by telephone, Judge Tomlinson directed submission of a substantiating doctor's note by September 15, 2016. Finally, Judge Tomlinson's order made clear that Michael and Lawrence were put on notice that any failure to appear at the September 23, 2016 settlement conference would "result in further action by the Court, up to and including the prospect of a contempt

9

hearing and any other sanction which the Court deems appropriate." DE [109]. DeMaio confirmed that Lawrence and Michael were served with Judge Tomlinson's order by way of a letter dated August 22, 2016. DE [110].

In a letter dated August 25, 2016 counsel for the FDIC and USM advised Judge Tomlinson that they were engaged in settlement discussions and were not yet ready to advise the Court whether they were in a position to attend the scheduled September 23, 2016 settlement conference. DE [113]. On the next day, those counsel advised that the Court that they remained interested in settlement and asked that the Court continue to order that all parties appear at the September 23, 2016 settlement conference. DE [114]. Judge Tomlinson therefore confirmed that the conference would go forward. The conference was held and, after a full day of negotiations, FDIC and USM had reached a framework for settlement. They were directed to inform the Court of the status of that framework by October 7, 2016. Judge Tomlinson noted that any settlement reached between FDIC and USM did not impact the claims against Marian, Michael and/or Lawrence, and that such claims remained active. DE [115]. On October 11, 2016, counsel for FDIC and USM requested an additional week in which to engage in settlement discussions. DE [117]. In response thereto, Judge Tomlinson scheduled a further settlement conference via telephone for October 21, 2016. DeMaio, Lawrence, Michael and Marian were excused from appearing. At that conference, Judge Tomlinson gave the FDIC and USM one final extension of time, until November 8, 2016, in which to settle with each other. She noted also that if there was not a settlement this case would go back on the discovery track and that discovery would be expedited. DE [118]. In a letter dated November 8, 2016 counsel for FDIC and USM advised Judge Tomlinson that they had not settled. Judge Tomlinson thereafter gave all parties until November 18, 2016 to renew any requests to move, before Judge Spatt, for summary judgment.

On November 18, 2016 FDIC renewed its request to move for summary judgment. DE 120. On December 6, 2016, Judge Spatt scheduled a conference to be held on December 20, 2016. The parties were directed to appear and be prepared to engage in settlement discussions. On December 12, 2016, after expressing some scheduling difficulties, USM informed Judge Spatt that it had reached a settlement with USM. He therefore asked that the conference before Judge Spatt be cancelled. DE [122]. Counsel for FDIC confirmed to Judge Spatt that a settlement with USM had been reached. He also stated, consistently with the fact that FDIC had never pursued any claim against third-party defendants, that once that settlement was consummated, FDIC continued to have no interest in pursuing any claim against Marian, Michael or Lawrence, all of whom had been brought into this case only by USM. DE [124]. Judge Spatt cancelled his conference and Judge Tomlinson thereafter cancelled her previously scheduled conference to be held on January 12, 2017.

Nothing transpired in this case for a period of two and one-half years following the stated settlement reached between FDIC and USM in November of 2016. The case, however, remained open (although dormant) on the docket. On June 4, 2019, in view of this prolonged period of inactivity, Judge Spatt entered an order directing the parties to provide a status letter. On July 3, 2019, the FDIC informed Judge Spatt that the settlement between FDIC and USM was consummated in April of 2019. FDIC asked that the Court keep the case open until full payment was made, i.e., until November 1, 2019. That letter also informed Judge Spatt that USM's claims against Lawrence, Michael and Marian remained pending, and that USM was contemplating its pursuit of those claims. USM requested that a status conference be scheduled after September 30, 2019 in order to determine how it would proceed. DE [125].

11

On July 8, 2019 Judge Spatt recused himself from this case and it was thereafter re-assigned to District Judge Mauskopf. DE [126]. On July 9, 2019, Judge Mauskopf directed the parties to file an order of conditional dismissal of the claim between FDIC and USM. She also requested that the parties confer and provide her with a letter identifying the parties and claims remaining in this case and information as to whether there were any motions pending. On July 18, 2019 counsel for the FDIC responded to Judge Mauskopf's order, indicating that the only claims remaining were the third-party claims brought by USM against Lawrence, Michael and Marian. It was noted therein that these three individuals continue to dispute the claims brought by USM. Counsel stated that Marian had provided input for the letter. Despite the use of her maiden name and her continued residence in the Home, Marian indicated to USM that Michael and Lawrence procured the Loan without her input and that Christiansen (the lawyer who represented them) was disbarred and jailed. She attributed the end of her marriage, the forced sale of the Home, and the ruin of her credit rating to Michael's mounting debt and deceit. Marian asked that USM take her version of the facts into account and not hold her responsible for the acts of her now ex-husband Michael and her now ex-father-in-law Lawrence. While the status letter to Judge Mauskopf reiterated DeMaio's consistently stated position that his clients (Michael and Lawrence) were not liable for any of the claims asserted by USM, neither DeMaio, Lawrence nor Michael participated in preparation of the letter. DE [127]. Even though the deadlines imposed by Judge Tomlinson had passed, the status letter stated that there were "no schedules presently pending" in this action. Id. This was not true, as the deadlines imposed by Judge Tomlinson for the end of discovery had not changed, and had long since passed.

Once this matter was revived (at the request of Judge Spatt and followed up by Judge Mauskopf - not pursuant to any action by either the FDIC or USM) Judge Tomlinson set the case

down for an in-person status conference to be held on August 9, 2019. DE [128]. In light of the order of conditional dismissal, Judge Tomlinson cancelled the conference. However, after realizing that there remained unresolved third-party claims, Judge Tomlinson ordered that the conference go forward. Neither DeMaio nor any of the third-party individual defendants (including Marian who was proceeding pro se) appeared at the conference. Judge Tomlinson's minute entry memorializing what occurred at that conference directed Marian to submit a letter explaining her non-appearance, and warned her of the possibility of a default being entered for failure to respond. Judge Tomlinson's minute entry made a record of the positions USM took at the conference. First, USM represented that neither Lawrence nor Michael had ever responded to the presently operative pleading. As discussed above, this representation was not true. Nonetheless, attorney Thomas, who made the representation, indicated that he would be seeking a certificate of default against Lawrence and Michael by August 23, 2019. Judge Tomlinson noted that Rule 37 would apply to any such motion since Michael and Lawrence had actually participated in this case. She directed that any response thereto be filed by November 14, 2019, or be waived. DE [131]. As to discovery, Judge Tomlinson noted attorney Thomas's representation that all depositions were completed. She also stated USM's unsurprising position that it did not intend to move for summary judgment. This is consistent with prior proceedings in this case when the deadline for the making of such motions passed with only the FDIC seeking to move for summary disposition. It is also not surprising given the factually intensive nature of USM's claims against third-party defendants. Although USM would not move for summary judgment, its counsel indicated that he intended to file a motion for sanctions pursuant to Rule 37. Judge Tomlinson advised counsel that if he intended to do so, he would be required to present a formal motion under the Federal Rules. Finally, Judge Tomlinson set December 18,

13

2019 as the date for submission of a final pretrial order. Counsel for the FDIC was excused from all further appearances. DE [131].

Marian responded to Judge Tomlinson's order in a letter dated August 19, 2019, apologizing and noting that she had been in contact with counsel for USM. DE [133]. Judge Tomlinson's responding order informed Marian that she was still engaged in this litigation, and that she needed to confirm with the Court that all discovery, as far as she was concerned, was complete. In a letter dated August 22, 2019 counsel for USM noted his mistake in stating that Lawrence and Michael had not answered the second amended third-party complaint. He explained, as explained by this Court above, that his confusion was caused by an error on the docket stating that the third-party complaint was filed in 2015 - and not in 2014; which date was a year after the docket reflects the filing of an amended answer. See DE [135]. In response to this letter Judge Tomlinson scheduled a telephone conference. DeMaio failed to appear for the conference. Judge Tomlinson's minute entry, appearing as DE [140] and dated September 5, 2019, noted that counsel for cross-defendants (DeMaio) had faxed a request for more time in which to respond to the already-responded to amended pleading. Judge Tomlinson noted the impropriety of seeking relief via an ex parte fax communication and stated that any requests for relief must be filed on the Court's ECF system. Judge Tomlinson further noted that no such filing had been made. In view of these facts, as communicated to Judge Tomlinson by counsel for USM (which, a detailed review of the docket makes clear were not correct) the Court permitted USM to move for a judgment of default. Judge Tomlinson specifically noted, however, that under the circumstances present here the "traditional vehicle for entering a default judgment" pursuant to Rule 55 was not appropriate. Even if Michael and Lawrence had not answered the operative pleading, they had undoubtedly appeared in this case and participated in

14

the litigation - albeit in a "very limited manner". As such, Judge Tomlinson advised counsel that the proper application to be made was pursuant to Rule 37(b) seeking sanctions against Michael and Lawrence in the form of a default judgment. Judge Tomlinson further advised counsel that any such application, however, was required to be accompanied by the "same proofs required under Rule 55." Thus, Judge Tomlinson noted specifically that any motion for a judgment of default must document damages and fees and costs. Finally, if USM decided to move for default in the manner outlined by Judge Tomlinson, the motion was required to be filed within 45 days of the September 5, 2019 conference. DE [140].

In a letter to Judge Tomlinson filed on the Court's ECF system on November 6, 2020 (which letter is oddly dated November 6, 2016) DeMaio wrote to advise the Court that Lawrence died on October 1, 2020. DeMaio stated that he had attended Lawrence's wake and that it was his belief that Lawrence died without any meaningful assets. DeMaio further stated his belief that under applicable New York State law, no verdict or decision may be imposed upon a person who has died without court appointment of a personal representative. DE [141].

On December 9, 2020, after the passage of the 45 day deadline imposed by Judge Tomlinson on September 5, 2019, USM filed a motion to substitute the "Estate of Lawrence Conde" as a party herein and to enter a judgment of default against Michael and Lawrence's estate. The latter branch of the motion sought entry of default pursuant to Rule 55(a) for the failure of Michael and Lawrence to defend themselves in this action. Entry of a judgment of default was sought pursuant to Rule 55(b). DE [142]. In support of the motion for a default USM relied on Judge Tomlinson's observations made regarding attorney DeMaio's failure to appear at the August 9 and September 5, 2019 conferences. DE [142-1]. USM argued that since 2019 (when activity herein was revived - not upon the request of USM - but on inquiry of the Court)

15

neither Michael nor Lawrence, through DeMaio, had participated in this litigation. The motion

for a judgment of default was accordingly based on their failure to appear at two court-ordered

conferences. DE [142]. As to a judgment, USM sought reimbursement of the $200,000 it paid to

FDIC to settle this action, as well as $167,450.50 in attorneys' fees, and costs in the amount of

$12,604.37 for a total judgment of $380,067.87, jointly and severally against Michael and

Lawrence's estate. USM's request to substitute the "estate" of Lawrence was not supported by

any documentation indicating that such an estate existed, or that an executor or administrator had

been appointed in the New York State Court system.

On March 15, 2021, while the motion was pending, USM followed up by way of a letter

addressed to Judge Tomlinson. That letter noted the pendency of the motion. DE [143]. After

being informed that its motion sought dispositive relief, (see Order of Tomlinson, M.J., dated

March 13, 2021) USM wrote to Judge Mauskopf requesting the same relief. DE [144]. On June

22, 2021, Judge Mauskopf terminated the motion, noting that this case was soon to be reassigned

to a different District Judge. Order of Mauskopf, J. dated June 22, 2021.

On June 30, 2021, this case was re-assigned to District Judge Komitee. On August 24,

2021, Judge Komitee requested that the parties file a status report. That report was filed by USM

on September 14, 2021. DE [145]. It noted the dismissal of its case against Ezratty. It also noted

the pendency of the motion previously filed on the docket herein as DE [142]. Finally, the status

report indicated Marian's pro se status and her position on the merits, as summarized above, that

any impropriety herein is attributable to Michael and the now-deceased Lawrence. DE [145]. On

October 13, 2021, Judge Komitee held a status conference after which he required USM to move

to renew its prior motion (for a default and substitution of counsel) by October 15, 2021. USM

was required to inform the Court by November 5, 2021 as to whether it intended to pursue its claims against Marian. DE [146].

USM again filed a motion for default and substitution of Lawrence's estate on October 15, 2021. That motion states that the default of Michael and Lawrence was being sought pursuant to Rule 37(b)(2)(A)(vi) or, in the alternative, Rule 55. DE [147]. Unlike its previously filed motion for default, USM's renewed motion made particular reference to Judge Tomlinson's instructions as set forth in her minute entry of September 5, 2019. While the renewed motion now made reference to Rule 37, the facts set forth in support of the renewed motion are the same as those set forth in support of USM's motion filed at DE [142]. Like the previous motion, the renewed motion characterized the conduct of Michael and Lawrence, through DeMaio, as a cavalier disregard for court orders justifying the ultimate sanction of default. See DE [147-1] (relying on Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305 (2d Cir. 1993)). On the same day it filed its renewed motion USM wrote to Judge Komitee advising that it filed the motion, and of its communications with Marian. As stated in the letter, Marian told counsel for USM that she had heard that DeMaio was no longer representing Michael and Lawrence. DE [148]. She also suggested to counsel that Michael was aware of the status of this case. Id.

On November 2, 2021, this Court was assigned as the Magistrate Judge herein. After that assignment, on November 5, 2021, counsel for USM wrote to Judge Komitee regarding its concerns that its motion for default sought entry of a discovery sanction for conduct that took place before Judge Tomlinson, and not before this Court. DE [149]. Under these circumstances USM was concerned that if default were entered against Michael and Lawrence (or, at that point against his estate), that they would seek relief from the default. USM also stated its concerns with dismissing Marian while the motion was still pending. Id. Nonetheless USM stated that if

17

the Court were to grant its motion and enter default against Michael and Lawrence's estate, it would dismiss its claims against Marian. Id. On November 23, 2021 Judge Komitee addressed the pendency of USM's claims against Christiansen. Judge Komitee ordered USM to file a motion for default against Christiansen by December 7, 2021 or, in the alternative, move to discontinue this matter against him. Order of Komitee, J. dated November 23, 2021.

On the date set by the District Court, USM moved for a Rule 55 default against Christiansen. DE [151] (correcting typographical errors in DE [150]). On December 9, 2021, Judge Komitee referred USM's renewed motion for default against Michael and Lawrence's estate (and to substitute Lawrence's estate) as well as the motion for a default against Christiansen to this Court for Report and Recommendations. On May 18, 2022, this Court scheduled all pending motions for a telephone conference to be held on May 23, 2022.

As set forth on the record during the conference, USM agreed to withdraw the pending motions seeking to substitute the Estate of Lawrence Conde and a default judgment pursuant to Rule 37 of the Federal Rules of Civil Procedure against the Estate of Lawrence Conde and Michael. Counsel also agreed to withdraw its motion for a default judgment pursuant to Rule 55 against Christiansen. As to its pleadings, USM agreed that its pleading should be labeled a third-party complaint and not a cross-complaint - as it had been incorrectly labeled from its inception. It was also agreed that the operative pleading in this matter is USM's Second Amended Third-Party Complaint (the "SATPC") which was filed on September 12, 2014 and found at DE [82].

With respect to third-party defendant Christiansen, while the Court took no position as to whether or not he was properly served the SATPC, it was clear from the docket that a notation of default was never entered against him following any such service. Instead, the only notation of default entered against Christensen is from service of the Amended Third-Party Complaint, and

18

is dated May 2014. That notation is found at DE [68]. Therefore, USM was advised that before proceeding with a motion for default judgment against Christiansen it must first obtain a notation of default against him with respect to the SATPC. Accordingly, USM agreed to withdraw its pending motion for default judgment as to Christensen found at DE [150], in order to obtain the proper notation of default.

With respect to USM's request to substitute the Estate of Lawrence Conde, the Court noted that there must be an administrator or other representative of an estate appointed in order to properly request a substitution. Agreeing that no such individual or entity had been appointed, USM withdrew its motion to substitute the "Estate of Lawrence Conde" while it presumably engaged in proceedings in New York State Court to determine whether any appointment had been made, or to obtain a proper appointment. USM was directed to submit a renewed substitution motion, along with the proper documentation, no later than December 1, 2022. If USM was unable to submit the motion by that date, counsel was directed to submit a letter advising this Court as to the status of its process.

With respect to the request for a Rule 37 default judgment as a sanction against Michael, this Court noted that the conduct underlying USM's request, namely the non-appearances by Michael and DeMaio, did not occur before this Court. As a default judgment is the most extreme sanction that can be sought, and out of an abundance of caution, this Court scheduled a telephone conference to be held on June 27, 2022. Michael, DeMaio, and Marian were all ordered to appear. USM agreed to withdraw its then-pending motion against Michael and was given leave, if appropriate, to submit a new Rule 37 motion after the June 27, 2022 conference. Consistent with its representations made at the May 23, 2022 conference, USM's motions appearing at docket entries [147], [150], and [151] were withdrawn. See Order dated May 23, 2022.

19

This Court held the telephonic conference scheduled for June 27, 2022. Although served (at his last-known address and through DeMaio) of notice of the conference, Michael did not appear, but DeMaio did. He stated that he no longer represents Michael and wished to formally cease representation. After hearing his application, this Court granted DeMaio's request to withdraw, and directed the Clerk of the Court to terminate his appearance on the docket. The Court noted Michael's failure to appear and advised USM that it could again move for default judgment pursuant to Rule 37 against Michael. This Court directed that any such motion was to be served on Michael, who was granted at least fourteen days to submit a response, if any, to the motion. Finally, the Court scheduled a telephonic motion hearing for August 8, 2022. Following the June 27, 2022 conference this Court again arranged for service to be made on Michael at his last known address.

On July 12, 2022, in accord with the deadline imposed by this Court, USM filed its now third motion for default against Michael. DE [157]. That motion was made pursuant to Rule 37(b)(2)(A)(vi) and, in the alternative, pursuant to Rule 55(a). As discussed at the June 27, 2022 conference, the motion sought default as a sanction for Michael's failure to appear before this Court on two separate occasions (in May and June of 2022). The Rule 55 motion sought default for Michael's failure to defend himself herein. DE [157].

A motion hearing conference was held before this Court on August 8, 2022. Again, Michael failed to appear. In light of the fact that he had been relieved as counsel, DeMaio did not appear. In an order entered after the August 8, 2022 conference, this Court granted USM's Rule 37 motion for entry of default. Having obtained a default against Michael, USM was willing to dismiss Marian. It was noted, however, that any such stipulation of dismissal was properly made

20

only to the District Judge. DE [159]. Thereafter, and in accord with the order of this Court, entry of judgment against Michael (as a Rule 37 sanction) was granted.

On August 26, 2022 Judge Komitee chose to construe this Court's Rule 37 sanction imposing a judgment of default against Michael not as a final order, but as a Recommendation that judgment against Michael be entered. Accordingly, the Clerk of the Court vacated the judgment entered on August 11, 2022. Consistent with Rule 72(b)(2) of the Federal Rules of Civil Procedure (which gives a party fourteen days in which to object to dispositive rulings of a Magistrate Judge), Judge Komitee granted Michael fourteen days in which to file any objection to this Court's Recommendation.

On September 1, 2022, DeMaio once again appeared in the case and, in accord with Judge Komitee's order, timely filed objections to this Court's Recommendation. DE [163]. DeMaio's objection includes an affidavit of merits which states that prior to entry of default he had been relieved as counsel, and that Michael was therefore unrepresented at the time that the default was entered. DeMaio further noted that Michael had previously participated in this litigation by filing timely answers, asserting affirmative defenses and answering interrogatories. In particular, DeMaio's objection notes that Michael has always taken the position that he never owned the Home (it was likely owned by Marian who was the seller in the alleged straw transaction). DeMaio further stated that the purchase of the Home by Lawrence took place not as an act of fraud, but on the advice of bankruptcy counsel. Indeed, the appraisal accompanying the sale was stated to have been approved by the bankruptcy trustee. Contrary to the allegation that Marian used the name Campi to cover up a fraudulent scheme, DeMaio's affidavit states that Marian used that name during her marriage to Michael. Michael and Marian are stated to have lawfully lived at the Home, and that after the sale (pursuant to the approval of the Bankruptcy

Trustee) they were responsible for payment of the Mortgage in lieu of rent. DE [163]. DeMaio's affidavit concludes that given these facts USM fails to state any cause of action against Michael and that his long-stated defense of failure to state a claim is meritorious. In an affidavit of the same date as that of DeMaio, Michael states that he reviewed DeMaio's affidavit and the facts set forth therein are true to the best of his knowledge. Id.

On September 18, 2022 USM filed reply papers in opposition to Michael's objections to this Court's Recommendation. DE [164]. Therein, USM again cites Michael's several failures to appear, both before the previously assigned Magistrate Judge and this Court. It thus relies on failures to appear before Judge Tomlinson (which were not the subject of the present Recommendation) as well as the failures to appear before this Court. USM also states that Michael had eight years in which to move to dismiss but chose not to make any such motion. USM argues that if Michael were truly interested in litigating this case he has had, and squandered, ample opportunity to do so. Finally, USM observes that this case has been pending for over ten years and needs to conclude. USM would prefer that it concludes not by way of a trial on the merits, by way of a judgment of default. DE [164].

Six months later, on March 15, 2023, USM made a follow up inquiry as to the status of its motion and the objections to this court's Recommendation. Again, USM noted that the case was pending since January of 2013. It requested either a hearing on its motion or the issuance of a final order. DE [165]. On October 12, 2023 USM made the same request it made in March of 2023 to Judge Komitee, again noting that objections to its motion were pending and that the case was over ten years old. DE [167].

On October 24, 2023 Judge Komitee noted the prior construction of this Court's order of default as a Recommendation. He also acknowledged that the parties have requested status

22

updates. Judge Komitee stated that no party herein "had briefed or argued the question of whether a default judgment is appropriate here under the standard set out by the Second Circuit in, for example, City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114 (2d Cir. 2011). Judge Komitee cited also to Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 187 (2d Cir. 2015), which "dictates that 'a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" Id. at 137. Characterizing the record as not fully developed, Judge Komitee referred, again, USM's motion for default filed under DE [157] and decided by this Court as DE [159] for Report and Recommendation. He also referred to this Court USM's letters seeking follow-up information (appearing at DE [165] and [167]). See Order of Komitee, J. dated October 24, 2023.

On October 30, 2023, this court issued a Report and Recommendation ("2023 R&R") recommending that the USM's motion for entry of default and a default judgment, whether construed pursuant to Rule 37 or 55 of the Federal Rules of Civil Procedure be denied. See DE [168]. In view of the recommendation, this Court further recommended that USM's letter requests for follow-up information and/or hearing be denied as moot. Id.

On June 2, 2025, the District Court adopted the 2023 R&R in its entirety. See DE [176]. The District Court further directed that the parties appear for a status conference on June 27, 2025. Id. The order also set forth that "[i]f, Michael Conde, whether represented or not, fails to comply with any other court orders or misses another scheduled conference, the Court will not hesitate to enter default judgment under Rule 55 for failure to defend." Id.

Michael failed to appear for the June 27, 2025 status conference. See Minute Entry dated 06/27/2025. In light of Michael's failure to appear, USM was directed to submit a letter

23

renewing its application for default judgment. Id. On June 30, 2025, USM submitted a letter

renewing their motion for judgment as a matter of law found at docket entry No. 157. DE [180].

On August 7, 2025, Judge Komitee directed that USM "file a supplemental submission

addressing why its allegation suffice to establish Conde's liability as a matter of law." Order

dated 08/07/2025. On September 15, 2025, USM filed their supplemental submission. DE [182].

The Court now turns to consider the merits of USM's application.

DISCUSSION

I.      Motions for Default under Rules 37 and/or 55

A.      Legal Standards

A judgment of default may be entered against a defendant pursuant to Rule 37 and/or

Rule 55. See Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444 (2d Cir. 2013). While the

conduct underlying these motions may be the same, the procedures and standards for imposing a

judgment of default in the first place differ. As to Rule 37, a judgment of default may be entered

against a defendant as a discovery sanction. It is the most severe of such sanctions and is

properly entered only after four conditions are considered: (1) the willfulness of the non-

compliant party; (2) the efficacy of less severe sanctions; (3) the duration of the non-compliance

and (4) whether the non-compliant party was properly warned of the consequence of non-

compliance. The last condition is particularly important to consider in the case of a pro se

defendant. As noted by the Second Circuit, "a district court abuses its discretion if it dismisses a

case without first warning a pro se party of the consequences of failing to comply with its

discovery orders." Guggenheim, 722 F.3d at 452.

Rule 55 may be relied upon to support entry of a judgment of default for the same type of

conduct alleged to support imposition of default as a Rule 37 sanction. The standards to be

24

applied under Rule 55 while similar, differ from those applied in the context of Rule 37. Specifically, a default judgment may be entered under Rule 55(a) not only where a defendant fails to file an answer, but also where the conduct of the party against whom default is sought rises to the level of failing to defend their position. Guggenheim, 722 F.3d at 454. If Rule 55(a) is satisfied by a finding of failure to defend, the Clerk of the Court "must" enter the defaulting party's default. Fed. R. Civ. P. 55(a). Thereafter, a judgment of default may be entered under Rule 55(b). Fed. R. Civ. P. 55(b).

To determine whether a party has failed to defend an action within the meaning of Rule 55(a) (the first step of entry of a Rule 55 motion) a court must consider: (1) the willfulness of the conduct; (2) whether the party against whom a default is sought has a meritorious defense to the claims alleged and (3) prejudice to the non-defaulting party. Notably, a Rule 55 default motion requires consideration of whether there is a meritorious defense. Id. at 454-55. Thus, Rule 55 employs a two-step process before entering a judgment of default against a party that fails to respond or defend. See Fed. R. Civ. P. 55; see also Romero v. Floris Constr., Inc., 2017 WL 5592681, at *2 (E.D.N.Y. 2017). When considering the second step of the process under Rule 55(b), all of the well-pleaded factual allegations in the complaint pertaining to liability are deemed to be true. See Qiu Hua Tan v. Voyage Express Inc., 2017 WL 2334969, at *2 (E.D.N.Y. May 25, 2017). However, it is up to the court to determine whether the unchallenged facts constitute a legitimate cause of action. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Additionally, damages are not deemed admitted on account of a defendant's default. See, e.g., Greyhound Exhibitgroup v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Olvera v. Los Taquitos Del Tio Inc., 2015 WL 3650238, *1 (E.D.N.Y. 2015). Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement

25

to damages to a "reasonable certainty." <u>Olvera</u>, 2015 WL 3620364, at *1. Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes." <u>Credit Lyonnais Sec. (USA) Inc. v. Alcantara</u>, 183 F.3d 151, 153 (2d Cir. 1999).  While the party seeking damages is entitled to all reasonable inferences from the evidence it offers, a court must "ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded." <u>Avelar v. Quiros, Inc.</u>, 2015 WL 1247102, at *5. At the damages phase, courts have discretion to hold an evidentiary hearing.  <u>See</u> Fed. R. Civ. P. 55(b)(2). Such a hearing is not required, however, so long as documents submitted, such as detailed affidavits, allow the court to conduct an inquiry sufficient to establish damages to a reasonable certainty. <u>See Avelar</u>, 2015 WL 1247102, at *7.

###### B.  Application of Rule 55 Standards

###### 1.  Entry of Default Pursuant To Rule 55(a)

In recognition that it could seek relief for Michael's conduct under Rule 37 as well as Rule 55, USM here moved (by way of different iterations of motions based upon the same conduct) pursuant to both Rules. However, Judge Komitte's order is clear that should Michael fail to appear for scheduled conferences or comply with court orders, "the Court will not hesitate to enter default judgment under Rule 55 for failure to defend." DE [176]. Therefore, this Court will only apply the Rule 55 standard to its analysis.

Rule 55 requires this Court to consider the willfulness of Michael's conduct. Application of Rule 55 requires the Court to also consider whether Michael has set forth a meritorious defense to USM's claims, as well as the prejudice that USM would suffer in the absence of a default. Upon consideration of the record, namely - Michael's failure to appear at the June 27,

26

2025 status conference as directed by Judge Komitee – this Court finds such conduct to be willful. The District Court specifically warned Michael that failure to appear at the conference would result in the District Court not hesitating to enter default judgment. See DE [176]. Thus, Michaels' conduct was willful.

Relevant to any Rule 55 analysis is not only whether the party against whom default is sought fails to file an answer, but also where the conduct of the party against whom default is sought rises to the level of failing to defend their position. Guggenheim, 722 F.3d at 454. Here, Michael has consistently denied liability. At every juncture in this case Michael has claimed that all acts taken in connection with the Loan and Mortgage were legitimate and taken only under the supervision of the bankruptcy court and trustee. Michael took this position early in the litigation and has stuck with it throughout. He denies all claims of fraudulent conduct. While Michael has previously set forth a meritorious defense to USM's claims, he has now failed to defend his position after being explicitly warned that failure to appear would constitute a failure to defend. As such, Michael's actions, or more pointedly, lack of action, now rise to the level of failing to defend his position.

Finally, under Rule 55 there is the question of prejudice to USM. The Court finds that Michael's failure to participate in the June 27, 2025 status conference did prejudice USM in a manner that would make entry of default appropriate. This case has been pending for over 13 years. While both Michael and USM are at fault for the delay for bringing this matter to a conclusion, the delay caused by Michael's failure to attend the status conference, falls squarely on Michael. This delay is solely attributable to Michael's conduct. At this juncture in the litigation, USM will incur prejudice if default is not entered - as without Michael's appearance,

27

there is no meaningful way for this litigation to move forward or conclude, absent an entry of default against Michael.

In light of the foregoing facts and analysis, the Court recommends that default be entered against Michael. In view of this finding, the Clerk of the Court should note the default of Michael Conde.

The Court now turns to the analysis leading to entry of judgment under Rule 55.

2.      Entry of Default Judgment Pursuant to Rule 55

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. Cardoza v. Mango King Farmers Mkt. Corp., No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)), report and recommendation adopted, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). The decision to grant or deny a default motion is "left to the sound discretion of a district court." Esquivel v. Lima Rest. Corp., No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) (quoting Shah v. New York State Dep't of Civ. Serv., 168 F.3d 610, 615 (2d Cir. 1999)); see Chen v. Oceanica Chinese Restaurant, Inc., 2023 WL 2583856, at *7 (E.D.N.Y. March 21, 2023) (the court "possesses significant discretion" in granting a motion for default judgment,

28

"including [determining] whether the grounds for default are clearly established.") (quotations and citation omitted).

    a.  <u>USM's Causes of Action For Indemnity</u>

USM's ninth, tenth and twelfth causes of action seek implied indemnity, comparative indemnity and contribution, and equitable indemnity against Michael.

Implied indemnity is an equitable doctrine recognized in the common law. <u>Gillmore v. Duke/Fluor Daniel et al.</u>, 221 A.D.2d 938, 634 N.Y.S.2d 588 (4th Dept 1995). "The general rule is that common law indemnity (also called implied indemnity) will arise in favor of one who is compelled to pay for another's wrong." <u>St. Nicholas Cathedral of Russian Orthodox Church in North America v. Colonial Co-op. Ins. Co.,</u> 2008 WL 787267, at * 2 (March 25, 2008) (citing <u>Margolin v. New York Life Ins. Co.</u>, 32 N.Y.2d 149, 152, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973)). "Where payment by one person is compelled, which another should have made ... a contract to reimburse or indemnify is implied by law." <u>McDermott v. City of NY</u>, 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)).

"Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." <u>Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.</u>, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing <u>McDermott v. City of N.Y.</u>, 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)); <u>accord</u> <u>Hernandez v. GPSDC (N.Y.) Inc.</u>, 2008 WL 220636, at *7 (S.D.N.Y. Jan.28, 2008). It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled ... to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" <u>Raquet v. Braun</u>, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quoting

29

Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N.Y. 461, 468, 31 N.E. 987 (1892)). Thus, indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (citations and internal quotation marks omitted).... In general terms, indemnity allows a defendant to recover for a loss occasioned solely "by imputation of law," Mas, 75 N.Y.2d at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257, that it would otherwise be forced to bear on its own. Amusement Industry, Inc. v. Stern, 2010 WL 445900, at * 4 (S.D.N.Y. March 1, 2010).

"[A]n indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them." Gillmore v. Duke/Fluor Daniel et al., 221 A.D.2d 938, 634 N.Y.S.2d 588 (4th Dept 1995); see also Westport Marina, Inc. v. Boulay, 2010 WL 1223238, at *11 (E.D.N.Y. March 24, 2010) ("Where one party is held liable solely on account of the negligence of another, indemnification applies to shift the entire liability to the one who was negligent.").

Further, "the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee." Monaghan v. SZS 33 Assoc., L.P., 73 F.3d 1276, 1285 (2d Cir.1996) (quoting Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc., 109 A.D.2d 449, 453, 492 N.Y.S.2d 371 (1st Dep't 1985)); see Rosado 66 N.Y.2d 21, 25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (("[C]ommon-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff."). Thus, implied indemnity is not available where the party seeking indemnification was itself at fault in causing the injury or damage upon which it seeks recovery.

30

Boulay, 2010 WL 1223238, at * 11; see Trustees of Columbia Univ. v. Mitchell/Giurgola

Assocs., 109 A.D.2d 449, 492 N.Y.S.2d 371, 375 (1st Dep't 1985) ("Since the predicate of

common law indemnity is vicarious liability without actual fault on the part of the proposed

indemnitee, it follows that a party who has itself actually participated to some degree in the

wrongdoing cannot receive the benefit of the doctrine.").

Here, USM alleges that the straw transaction at issue was orchestrated by Michael in

order to obtain funds to pay his bankruptcy debt. At the time of the closing, various closing

documents were executed in which USM relied upon, such as:

a.      a final Uniform Residential Loan Application, which affirmed the
        Borrower's representation that the Property would be his primary
        residence when, in fact, it was not;

b.      a handwritten document entitled "Escrow Agreement" whereby the
        Borrower, Seller Defendants, Christensen, and Ezratty each acknowledged
        and agreed that each acknowledged and agreed that certain sums would
        remain in escrow pending satisfaction of certain liens and judgments held
        by RLI Insurance and Keystone Mechanical Corporation against the Seller
        Defendants, each of which were identified as creditors in the Bankruptcy
        Case;

c.      a purchase affidavit where the Borrower represented that he resided at the
        Property;

d.      a property tax assessment disclosure wherein the Borrower and Ezratty
        each endorsed and represented, among other things, that the transfer of
        title to the Property did not involve a sale between relatives or former
        relatives, when in fact they knew that was not the case; and

e.      a document entitled "Notice of No Oral Agreements" wherein the
        Borrower represented, without limitation, that "there are no oral
        agreements between the parties."

SATPC ¶ 29.

USM alleges that the true nature of the transaction was not readily available or known to the USM. However, USM alleges that Michael knew that USM

> was acting on the basis of this mistaken knowledge because all of the loan application documents contained representations that were either contrary to the true facts and circumstances or omitted by reference or disclosure of them. As a consequence of this superior knowledge, the Seller Defendants had a duty of disclosure to both USMC and the FDIC to disclose said information.

SATPC ¶ 87.

> The Application itself also provides for indemnity. Specifically,

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application.

DE [182] at p. 8-9.

As such, USM has properly alleged its indemnity clauses of action as to Michael. Therefore, this Court recommends that USM is entitled to indemnification from Michael.

b. Fraud and Intentional Misrepresentation Claims

The elements of common-law fraud and intentional misrepresentation under New York law are the same. Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir.1998). In either case, a plaintiff must show that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." Cent. Pacific, Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007).

USM alleges that Michael orchestrated the transaction at issue so that he could extract the proceeds from the sale to pay his bankruptcy debts. USM alleges that Michael recruited Lawrence to stand-in as a straw borrower knowing that Lawrence had no intention of residing at the Property but, instead, Michael would continue to do so.

Michael also promised that he would continue to retain all financial responsibility for the Property. Michael also knew that because title to the Property was vested in his wife's maiden name, Campi, that the familial relationship with Lawrence, would be concealed. USM alleges that all of these actions were in an effort to allow Michael to obtain funds to cover his debt from bankruptcy. SATPC ¶¶ 9-14. As a result, USM relied upon these false statements and omissions and suffered damages as a result if such reliance.

Thus, USM has plausibly alleged its fraud cause of action as against Michael. Accordingly, this Court recommends that default judgment in favor of USM be entered as to the fraud claims against Michael.

### c. Negligent Misrepresentation and Negligence

To state a claim for negligent misrepresentation under New York law, "a plaintiff must assert '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" Eidelman v. Sun Prods. Corp., No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. 2017) (quoting Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012)).

33

The "duty" or "special relationship" element of negligent misrepresentation limits such claims to "situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" Anschutz Corp., 690 F.3d at 114 (quoting In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 271 (2d Cir. 1993)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." Kimmell v. Schaefer, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).

To establish a prima facie case of negligence under New York law, "a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach.'" Coyle v. United States, 954 F.3d 146, 148 (2d Cir. 2020) (quoting Solomon ex rel. Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)).

USM alleges that Lawrence is the agent of Michael for purposes of the transaction at issue, and therefore, Michael as the principal, is liable for Lawrence's conduct. SATPC ¶ 8. At the pleading stage, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority.

34

"Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." Fletcher v. Atex, Inc., 68 F.3d 1451, 1461 (2d Cir. 1995) (citing Restatement (Second) of Agency § 7 (1958)). "[A]n agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." Highland Capital Management LP v. Schneider, 607 F.3d 322, 327 (2d Cir. 2010). "Actual authority is created by direct manifestations from the principal to the agent[.]" Id. (citation omitted). Whether actual authority exists "depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." Itel Containers Intern. Corp. v. Atlanttrafik Exp. Service Ltd., 909 F.2d 698, 702 (2d Cir. 1990).

USM pleads facts which together support a reasonable inference that Michael conferred authority upon Lawrence to engage in the course of dealing described. All of the benefits of the transaction flowed to Michael; Lawrence received nothing. Michael orchestrated the transaction as a "sale" of the Property when Lawrence had no intention of residing in the Property. In fact, Michael continued to occupy the Property. Michael received the benefit of the net proceeds of the loan, which he used to pay off his bankruptcy debt. Michael also concealed Campi's true identity and the familial relationship with Lawrence. Had any of this information been disclosed to USM, the loan would never have been approved and funded. SATPC ¶ 113.

USM has sufficiently pled its negligent misrepresentation, and negligence causes of action as against Michael. Accordingly, this Court recommends that default judgment in favor of USM be entered as to the negligent misrepresentation and negligence claims against Michael.

35

## RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that USM's motion for entry of default and a default judgment, appearing as Docket Entry 180, construed pursuant to Rule 55 of the Federal Rules of Civil Procedure be granted. In view of this Recommendation, should the District Court ultimately adopt this recommendation, this Court further recommends that USM be granted 30 days to submit evidence to the District Court in support of its damages determination.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing USM's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Michael Conde at his last known address and to file proof of service on ECF by February 12, 2026. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ( [A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ( [F]ailure to object timely to a magistrate s report operates as a waiver of any further judicial review of the magistrate s decision.").

**SO ORDERED.**

Dated: Central Islip, New York
      February 9, 2026

                                    /s/ Anne Y. Shields
                                   ANNE Y. SHIELDS
                                   United States Magistrate Judge