```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

FEDERAL DEPOSIT INSURANCE CORPORATION,
in its capacity as Receiver of AmTrust
Bank,                                        MEMORANDUM & ORDER
                                             13-CV-517(EK)(AYS)
                    Plaintiff,

        -against-

US MORTGAGE CORPORATION,

                    Defendant.

-------------------------------------x

US MORTGAGE CORPORATION,

        Third-Party Plaintiff,

        -against-

MICHAEL CONDE,

        Third-Party Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

This order represents the conclusion of a long litigation. The Court assumes the parties' familiarity with the underlying facts, as set forth in Judge Shields's Report and Recommendation dated February 9, 2026. *See* ECF No. 183. As relevant here: In 2013, the Federal Deposit Insurance Corporation ("FDIC") sued U.S. Mortgage Corporation ("USMC") for delivering a loan package that misrepresented and omitted

material information about a "straw" borrower to a regulated bank.

USMC in turn impleaded Michael Conde, the underlying borrower's son.  USMC alleged that Conde sold his house to his father at an inflated price to pay off his bankruptcy debts, and then proceeded to stay in the house.  USMC claimed that it had been defrauded by Conde and was entitled to indemnification. *See id.* at 3.  After USMC and FDIC settled for $200,000 in 2019, USMC sought to collect that amount — plus legal fees — from Conde.  *Id.* at 16.  Since then, the Court determined Conde's liability and that he has defaulted.  *See* ECF No. 185.  The Court now turns to the question of USMC's damages.

USMC seeks to recover the $200,000 settlement payment, plus $222,242.95 in attorney's fees and costs.  USMC has submitted affidavits in support of its damages claim.  *See* ECF Nos. 157-2, 157-3, 188, 189.  For the reasons that follow, the Court awards $348,613.57 in damages — reflecting the full settlement payment and a reduced fees-and-costs figure of $148,613.57.

## I.  Settlement Fee

USMC first seeks to recover from Conde the settlement payment it made to FDIC.[1]  Under New York law, an indemnitee who

---

[1] In support of its request, USMC has submitted an affidavit from its founder and CEO.  The CEO avers that in 2019, USMC paid FDIC $200,000 to

settles an underlying claim may recover the settlement amount from the indemnitor "subject to the proof (1) of liability and (2) as to the reasonableness of the amount of settlement." *Tokio Marine & Fire Ins. Co. v. Grodin*, No. 05-CV-9153, 2006 WL 3054321, at *3 (S.D.N.Y. Oct. 27, 2006).[2]  The first element is already satisfied.  *See* ECF No. 185.  Therefore, the only remaining question is whether the $200,000 settlement was reasonable.

In the indemnification context, a settlement amount is presumptively reasonable when it "was reached by opposing parties as a compromise."  *B.S. Livingston Export Corp. v. M/V Ogden Fraser*, 727 F. Supp. 144, 148 (S.D.N.Y. 1989).  Arm's-length negotiations by experienced counsel militate in favor of the conclusion that a settlement is reasonable.  *See, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (the absence of arm's-length negotiations "would count significantly against" a finding of reasonableness).

Here, FDIC and USMC settled their dispute after months of negotiation and multiple settlement conferences.  *See* ECF Nos. 113, 115.[3]  And USMC was incentivized to negotiate the best

---

settle the case, in six monthly payments of $10,000 and a final payment of $140,000.  Milner Aff. ¶ 3, ECF No. 188.

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[3] Conde was aware of these proceedings, but his lawyer indicated that he would not participate or contribute.  *See* ECF No. 108.

outcome it could.  At the time, it was unclear whether USMC would be entitled to indemnification from any of the third-party defendants.  Further, USMC knew (as a practical matter) that it could not confidently rely on Michael Conde for any indemnification, given his unreliable participation in this action.  On this record, the settlement amount obtained by USMC is reasonable.

## II.  Attorney's Fees

USMC also seeks to recover the attorney's fees it incurred due to the litigation.  It submitted an affidavit from its attorney, Ryan Thomas, outlining attorney's fees totaling $209,455.60 — $180,777.55 incurred while Thomas was at the law firm Johnston Thomas, and $28,678.05 incurred since Thomas joined the law firm Anderson Zeigler.  Thomas Aff. ¶¶ 6, 9, ECF No. 189.

USMC can recover only the amount for which it has proffered sufficient evidence.  *N.Y.S. Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  And the amount is to be calculated by multiplying the reasonable hourly rate by the reasonable number of hours for each category of attorney's fees.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

4

### A.   USMC's Documentary Submission

"The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015); *see generally Carey*, 711 F.2d 1136.  The Second Circuit generally requires that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  In addition, "attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records" may satisfy the Second Circuit's evidentiary requirements.  *Citrin v. Erikson*, 918 F. Supp. 792, 803 (S.D.N.Y. 1996).  Still, the Court may reduce the number of hours claimed when "the fee applicant has not provided enough information for the Court to determine whether and to what extent the fees requested were reasonably expended on compensable legal tasks."  *Hilldun Corp. v. N:Philanthropy LLC*, No. 23-CV-3178, 2024 WL 4873716, at *8 (S.D.N.Y. Oct. 30, 2024).

Thomas attaches two charts that summarize periods of time, hours worked, and the hourly rate for his own work, associate attorneys' work, contract attorneys' work, paralegals' work, clerical staff's work, and total costs.  *See* ECF No. 189,

5

Exs. A, B.  The exhibits do not indicate the nature of the work. However, in support of USMC's original motion for default judgment in 2022, Thomas submitted detailed billing records that do indicate the nature of the work.  ECF No. 157-2.  At that time, USMC was requesting $167,464.50 in attorney's fees and $12,604.37 in costs.  *Id.*  The Court will thus consider the evidence put forth in support of the original default judgment motion, and USMC's recovery will be limited to the reasonable amount for which sufficient evidence has been presented — that is, the period from February 2013 to November 2020.  *Cf. Hilldun*, 2024 WL 4873716, at *8 (reduction of fees within district court's discretion).

**B.    Reasonable Rates**

USMC must establish that the fees it wishes to recover are reasonable.  Here, it asks to be compensated for: 147.6 hours of partner time at a rate of $325; 175.0 hours of partner time at a rate of $350; 32.9 hours of partner time at a rate of $360; 44.6 hours of associate time at a rate of $250; 34.0 contract attorney hours at a rate of $300; 24.6 contract attorney hours at a rate of $350; 19.1 law clerk hours at a rate of $120; 83.8 paralegal hours at a rate of $150; 8.5 paralegal hours at a rate of $165; and 2.2 clerical staff hours at a rate of $80.

"District courts have broad discretion in determining the reasonableness of an attorney's requested fees." *Dacas v. Duhaney*, No. 17-CV-3568, 2020 WL 4587343, at *2 (E.D.N.Y. June 18, 2020). The reasonable rate is based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). The prevailing rates may be based on evidence presented or on the Court's own knowledge of hourly rates charged in the community. *See Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). The "community" is generally considered the district where the district court sits. *See Lochren v. County of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009).

Thomas submits only his own affidavit in support of the claim that the attorney's fees are reasonable. He states: "I am familiar with the rates attorneys charge for litigation services such as those offered to USMC during the course of this litigation. . . . [T]he rates charged [to] USMC are comparable to, or even lower than, the rates charged by other attorneys with similar background and experience." ECF No. 189 ¶ 4. This is generally insufficient to establish reasonableness. Thomas must "produce satisfactory evidence — in addition to [his] own affidavits — that the requested rates are in line with those

7

prevailing in the community for similar services." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Court thus considers other sources. "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff." *Ascentium Cap. LLC v. Full Speed Auto Grp., Inc.*, No. 22-CV-7559, 2024 WL 3345876, at *6 (E.D.N.Y. June 11, 2024).

Several of the rates claimed are presumptively reasonable: partner rates ranged from $325-360; the associate rate was $250; the law clerk rate was $120; and the clerical staff rate was $80. *Ascentium*, 2024 WL 3345876, at *6; *Prime Contractors*, 786 F. Supp. 3d at 550-52; see *also* ECF No. 157-2 ¶ 3 (listing fees claimed).

However, the requested rates for contract attorney fees are particularly high. Thomas states his firm's contract attorneys were billed at rates ranging from $300-350 — almost the same rate as the partner rates — but gives no indication as to these attorneys' experience or expertise. Rate reduction is warranted absent this information. *See Pandeosingh v. Am. Med. Response, Inc.*, No. 09-CV-05143, 2014 WL 1365435, at *2 (E.D.N.Y. Apr. 7, 2014) (reducing rate for contract attorney to $100). Contract attorneys typically engage in tasks such as

8

document review that could be performed by junior associates. Given the lack of information about the contract attorneys in this case, the contract attorney rate will be reduced to $175.

The paralegal rate is likewise high, and the submissions similarly lack information regarding the paralegals' experience and expertise.  The paralegal rate will therefore be reduced to $100.

## C.   Reasonable Hours

Thomas, a partner, billed significantly more hours on this case than any other attorneys or support staff at his firm, which can warrant a reduction of fees.  It is inappropriate "to assign partner-level billing rates to tasks that first- or second-year associates . . . could easily perform."  *Wang v. XBB, Inc.*, No. 18-CV-7341, 2023 WL 2614143, at *7 (E.D.N.Y. Mar. 23, 2023).  When the party seeking recovery submits unreasonable hours, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  Thomas billed 355.5 hours on this case, while his associates billed only 44.6 hours, and contract attorneys 58.6 hours.  ECF No. 157-2 ¶ 3.

The billing records show that Thomas frequently engaged in document review and other tasks that could have been delegated to associates, which justifies reducing the fee.  *See*

*id.* at Invoice Nos. 6874, 6963, 7381.  In light of the foregoing, the Court finds that reducing Thomas's hours by 15% is reasonable.

\* \* \*

Applying these rates and reductions yields the following lodestar calculation:

| Category of Fees | Hourly Rate | Hours | Total |
|---|---|---|---|
| Partner (Thomas) fees | $325 | 147.6 – 15% = 125.46 | $40,774.50 |
| Partner (Thomas) fees | $350 | 175 – 15% = 148.75 | $52,062.50 |
| Partner (Thomas) fees | $360 | 32.9 – 15% = 27.97 | $10,069.20 |
| Associate fees | $250 | 44.6 | $11,150 |
| Contract attorney fees | $175 | 58.6 | $10,255 |
| Law clerk fees | $120 | 19.1 | $2,292 |
| Paralegal fees | $100 | 92.3 | $9,230 |
| Clerical staff fees | $80 | 2.2 | $176 |
| Total | | | $136,009.20 |

Therefore, USMC is entitled to $136,009.20 in attorney's fees.

## III. Costs

USMC also seeks to recover costs of $12,787.35, which are recoverable only if they are supported by "adequate documentation."  *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  The contemporaneous time records attached to the original motion for default judgment provide a detailed breakdown of the costs and what they were incurred for, to a total of $12,604.37.  The costs included filing fees and travel expenses.  These costs are awarded as requested.

Any remaining costs have been incurred since Thomas joined Anderson Zeigler.  ECF No. 189 ¶ 9.  However, the affidavit does not indicate what any of these costs were incurred *for*.  Absent such an explanation, the costs are not recoverable.

Accordingly, the Court awards $12,604.37 in costs.

### IV.  Conclusion

For the foregoing reasons, third-party plaintiff USMC is awarded damages in the amount of $348,613.57.  This amount includes the settlement fee of $200,000, and professional services fees and costs in the amount of $148,613.57.

The Clerk of Court is respectfully directed to enter default judgment against third-party defendant Michael Conde and close the case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    April 27, 2026
          Brooklyn, New York

11